IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CV-336-BO

| | |
|---|---|
| TONY L. FAIRCLOTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on defendant The Goodyear Tire & Rubber Company's ("Goodyear") motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). [DE 15]. The motion is ripe for adjudication. For the reasons stated herein, defendant's motion is DENIED.

## BACKGROUND

On May 8, 2013, plaintiff filed a complaint alleging claims against Goodyear for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for breach of contract. On August 27, plaintiff filed a motion to amend his complaint which was granted on August 30, 2013. The amended complaint dropped the cause of action for breach of contract leaving just to ADA claim. Defendant now moves for judgment on the pleadings.

Plaintiff began working at Goodyear's Fayetteville facility in 1996 and worked there throughout his tenure with the company. On August 8, 2006, plaintiff sustained a non-work related neck injury after he was involved in an accidental shooting. Plaintiff alleges that as a result of that injury he is unable to wear any type of headgear including eye glasses, goggles,

and/or hats because wearing them causes severe dizziness and migraine headaches. Plaintiff further alleges that after his injury, Goodyear exempted him from a company requirement of wearing safety glasses while working. However, on January 18, 2011, Goodyear notified all employees that they were required to comply with the company's personal protective equipment ("PPE") requirements which included wearing safety glasses. Goodyear additionally notified its employees that anyone with a medical condition would have their situation reviewed on an individual basis.

Plaintiff alleges that he tried to comply with the new requirements but could not and was placed on medical leave without pay on February 17, 2011. He was informed that he could not return to work due to his inability to wear safety glasses on the job. Plaintiff alleges that at this time he was informed that the company would continue to work his situation out but that ultimately Goodyear failed to make necessary and reasonable accommodations. Plaintiff filed a written grievance on September 12, 2011, through the United Steel Workers' Association (the "Union") relating to his denial of work. Finally, on December 6, 2011, as part of the grievance process, Goodyear informed the Union in writing that the grievance was denied and plaintiff would not be able to return to work until he was able to comply with the PPE requirement.

## DISCUSSION

A motion for judgment on the pleadings pursuant to Rule 12(c) raising the defense of failure to state a claim upon which relief can be granted is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of

2

the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Defendant argues that plaintiff's ADA claim is time barred. Although the defense of statute of limitations is an affirmative defense, it "may be raised by motion pursuant to FED. R. CIV. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). It is well settled that "[c]laimants under the ADA must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory practice." *J.S. ex rel. Duck v. Isle of Wight Cnty. Sch. Bd.*, 402 F.3d 468, 475 n.12 (4th Cir. 2005) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)). "When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court. This filing requirement acts as a 180-day statute of limitations. . . ." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994). Here, plaintiff filed his EEOC charge on April 10, 2012. In order to be timely, any alleged discriminatory practice of which plaintiff complains must have occurred on or after October 13, 2011.

Plaintiff is alleging a discrete discriminatory act here – the denial of his request for an accommodation under the ADA. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (holding that the denial of a disabled employee's request for accommodation is a discrete discriminatory act). With respect to allegations of a discrete discriminatory act, the 180 day clock begins to run on the day the act occurred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Defendant alleges that the discrete act that started the clock here is the plaintiff's placement on medical leave on February 17, 2011. Defendant argues that as of this date, plaintiff knew that Goodyear had retracted his previous exemption from the PPE requirement and was not going to allow him to work without safety glasses. Plaintiff argues that the clock did not begin to run until defendant's December 6, 2011 letter. Plaintiff argues that he reasonably understood his medical leave to be temporary based on the promises of defendant and did not understand that it was permanent until the letter revealed it to be so.

Plaintiff's 180 day clock began to run on December 6, 2011, once Goodyear notified the Union that plaintiff's grievance was denied and he would not be allowed to work until he was able to comply with the PPE requirements. Although, plaintiff was placed on medical leave on February 17, 2011, it is not clear, that as of this date, plaintiff was on notice that Goodyear was denying him a request for an accommodation. Accepting as true all of the factual allegations in the complaint, it is apparent to this Court that the plaintiff reasonably relied on promises made by Goodyear, and did not believe that his request for an accommodation had been denied until December 6, 2011.

At the time plaintiff was initially placed on medical leave on February 17, 2011, Goodyear promised him that the company would continue to work his situation out. When the company failed to do so, he filed a grievance with the Union in an attempt to have his medical

4

leave terminated and to be reinstated to his previous position. After Goodyear rejected his grievance, plaintiff filed his EEOC charge on April 10, 2012, 126 days after receiving the December 6, 2011 letter.

Because plaintiff's leave of absence was ambiguous as to its permanence until Goodyear's letter to the Union, the statute of limitations cannot be viewed to have begun running until that date, December 6, 2011. Defendant cites *Martin v. Sw. Va. Gas Co.*, 135 F.3d 307 (4th Cir. 1998) for the proposition that a union grievance does not toll an EEOC charge per se. However, the question here is not whether plaintiff's statute of limitations should be tolled, but rather when it begins. The facts in *Martin* support the determination of this Court. In *Martin*, the plaintiff was placed on an unpaid leave of absence for over six months before being sent a 90-day termination letter. 135 F.3d at 309. In *Martin*, the dispute was not whether the statute of limitations began to run when the plaintiff was placed on a leave of absence but whether it began with the receipt of the letter stating that his employment would be terminated or at the end of the 90 days' notice. *Id.* The *Martin* court did not consider if the statute of limitations began to run at the start of the leave of absence which is what defendant argues here.

For the purposes of this motion, accepting as true all of the factual allegations in the complaint, this Court determines that the discrete discriminatory act took place on the day plaintiff became aware that his leave of absence was permanent and no accommodation would be made by Goodyear. Plaintiff became aware of that fact on December 6, 2011 after the Union received the letter from Goodyear which informed it, and plaintiff, that plaintiff's grievance was denied and his leave of absence would be permanent until he could comply with the PPE policy. April 10, 2012 is within 180 days of December 6, 2011, therefore plaintiff's EEOC charge was timely. Accordingly, defendant's motion is denied.

5

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is DENIED. The matter may proceed in its entirety.

SO ORDERED.

This the ___9___ day of December, 2013.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE